STATE OF WEST VIRGINIA *v.* J. J. N. QUINLAN *et al.*

(No. 9400)

Submitted September 15, 1942. Decided September 22, 1942.

*Buford C. Tynes* and *W. H. Daniel,* for petitioner.
*George I. Neal* and *Samuel Biern,* for respondent.

PER CURIAM:

The information upon which this citation for contempt of court was issued charges that in utter disregard of this Court's order entered August 1, 1942, in a mandamus proceeding of *Lucy Huffman et al.* v. *O'Brien et al.,* constituting the Election Commission of this state, J. J. N. Quinlan, Prosecuting Attorney of Cabell County, at the request of the County Court of that county, prepared a written opinion, substantially at variance with the order

of this Court entered in the *Huffman* case, which he caused to be mimeographed and sent by mail to the known addresses of the election officials of Cabell County on the afternoon of August 3, 1942, with the result that in many of the precincts of Cabell County the receiving clerks unlawfully assisted voters at the primary of August 4th in the preparation of their ballots.

An answer was filed denying the charges and, upon motion of the petitioners, full proof was taken in the form of depositions.

Quinlan denies emphatically all direct or indirect knowledge of this Court's order prior to the mailing of his opinion on the afternoon of August 3, 1942, and upon both direct and cross-examination narrates in more or less detail his course of conduct from the time at which this Court's order was entered upon the early afternoon of August 1st, until and after the mailing of his opinion at around mid-afternoon on August 3rd, the day that intervened having been Sunday, August 2nd. Newspapers were introduced to show that this Court's order in the *Huffman* case was a matter of considerable public interest, the dispatches concerning which had been carried with appropriate headings on the front page of the local newspapers published the morning of August 2nd and August 3rd. It was likewise shown that on the morning of August 6th a local news item described an interview with Quinlan on August 5th in the course of which he stated that his opinion had been prepared on August 1st, contradicting his testimony that it was in the forenoon of August 3rd. Furthermore, the testimony of Quinlan is in direct contradiction to that of the County Clerk of Cabell County who swore than on the morning of August 3rd, between nine-thirty and ten o'clock, Quinlan called him on the telephone and in substance asked him if he had received from the Secretary of State a communication stating the legal limitations placed upon the duties of receiving clerks, and being told that he had and that he, the county clerk, was preparing a mimeograph letter giving the substance of the telegram that he had re-

·ceived from the Secretary of State, was told by Quinlan that there seemed to be considerable confusion as to the meaning of our Permanent Registration Act and to do nothing further concerning the advice ˜of the Secretary of State until he, the county clerk, heard further from him after he had communicated with the Clerk of this Court to ascertain the substance of this Court's writ of mandamus directed to the Secretary of State. This occurrence Quinlan positively denies.

There are other conflicts in the testimony taken pursuant to the motion of the petitioner that we believe it might be necessary to discuss if the question before us turned upon the weight of the evidence and were to be decided dependent upon a preponderance thereof. But since the majority of the Court, composed of Judges Kenna, Riley and Rose, are of the opinion that the question of what may be termed an indirect contempt by failing to comply with a writ of mandamus is dependent upon a legal relationship not shown to exist in this case, and the Court is united in recognizing this charge as constituting a criminal contempt, the establishment of which must be by clear proof, sometimes referred to as "proof beyond a reasonable doubt", we do not regard it as necessary to discuss the evidence further, beyond saying that we believe it is insufficient to sustain a finding of guilty.

The legal question arises from the fact that the order of this Court which Quinlan is charged with having knowingly disregarded was an order entered on the 1st day of August, 1942, in a mandamus proceeding to which the Secretary of State as chief registration official for the state and the other persons comprising the election commission were the only named respondents. That being so, mandamus being a proceeding at law which operates only *in personam* and this Court's order therein having been fully and promptly complied with by the Secretary of State in the performance of a ministerial duty, the majority of the Court is of the opinion that the nature of the proceeding in which the order was en-

tered does not permit its scope to be enlarged to the extent of including ministerial officers whose course of conduct contravened the spirit, if not the letter, of the directions that this Court required the Secretary of State to give to the election officials. Any direct and wilful disregard would violate the regulation of the Secretary of State, because the peremptory writ of this Court does not include those who violate the rules laid down by him who were not parties to the proceeding in mandamus, though the rule violated may have been promulgated in compliance with this Court's process.

On the other hand, Judges Fox and Lovins are of the opinion that the *Huffman* case was properly before this Court for hearing and decision; that we interpreted the pertinent statutes to mean that aid to voters by poll clerks could only be given in certain clearly defined cases; that when we attempted to put our ruling in force by commanding the State Election Commission to issue a rule and regulation embodying our view, the same was binding, not only on the Election Commission, but, knowledge thereof being shown, it was likewise binding on every official, state and local, who had any part to play in any election to which our ruling related, including election officials, clerks of courts, county courts, and prosecuting attorneys where, acting in their official capacity, they assume to advise county courts or election officials in respect to their duties. They argue that unless we so hold, the ruling of this Court on a matter of state-wide importance and application becomes subject to the conflicting views of the hundreds, if not thousands, of people throughout the state who have something to do with holding of elections. That if state and county officials may thus disobey the law, then our rulings have no practical effect, our power and prestige is impaired, and we are in danger of becoming a body with a high-sounding name but whose rulings command neither respect nor obedience.

For the foregoing reasons, the rule in this matter will be discharged.

*Rule discharged.*